# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARKALE JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 08-0014-WS-C** |
| | ) | |
| **WINN-DIXIE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 28). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 29-30, 35-37, 40, 44),[1] and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file,[2] the Court concludes that the motion for summary judgment is due to be granted.[3]

## BACKGROUND

The plaintiff, an African-American, was employed by the defendant as assistant in-store coordinator ("AISC"). Among his duties was counting the cash in the store safe. In

---

[1] The plaintiff's original response, (Doc. 34), was superseded by his corrected version. (Doc. 40). The Court therefore will not consider the original response.

[2] The defendant's motion to supplement the record, (Doc. 45), is **denied**. Assuming without deciding that it is ever proper for a defendant to submit additional evidentiary material with its reply brief, the material the defendant offers is, by its own admission, "in direct conflict" with the plaintiff's evidence, (*id.*, ¶ 3), and thus cannot be considered by the Court on motion for summary judgment.

[3] While the Court has denied the plaintiff's motion for leave to file a surrebuttal, (Doc. 48), it has reviewed his proposed surrebuttal brief. (Doc. 46). Nothing therein would alter the resolution of the motion for summary judgment.

August or September 2006, he participated in an in-house investigation of an incident in which a noose was discovered at the plaintiff's store.  In December 2006, approximately $1,000 was discovered missing from the store safe.  In January 2007, the plaintiff was moved to the position of grocery stock associate ("GSA"), from which he voluntarily resigned in June 2007.  The complaint alleges that the plaintiff was moved to GSA on the basis of race discrimination and retaliation, in violation of 42 U.S.C. § 1981.  (Doc. 1, Exhibit 1).

## DETERMINATIONS OF UNCONTROVERTED FACT

The plaintiff was employed as AISC in March 2006.  (Doc. 36, ¶ 20).

In August or September 2006, Rosemarie Leitner, a human resources field representative employed by the defendant, investigated an incident involving a noose at the plaintiff's store.  (Doc. 40 at 23; Doc. 36, ¶ 23).  Leitner interviewed the plaintiff, among others.  (*Id*., ¶ 25).

In December 2006, the in-store coordinator ("ISC") was Rose Page, an African-American female; the store manager was Brent Sellers, a white male; and the store co-manager was Jeremy McPherson, a white male.

The defendant's cash-handling procedures provide that money in the safe be counted, its contents recorded on a safe count sheet, and the amount reconciled with the store's office cash report, at the following times: at opening; when the safe key changes hands; and at closing.  (Doc. 36, ¶ 8).

The defendant's cash-handling procedures provide that, at opening, the opening associate (usually the ISC or AISC) performs a count, and the opening manager (usually the store manager or co-store manager) also performs a count.  (Doc. 36, ¶¶ 9-10).

The defendant's cash-handling procedures provide that, after opening, the safe key is to be kept by the opening associate, until the closing associate reports to work.  The opening and closing associate then each count the safe's contents, and the key is

transferred to the closing associate.  (Doc. 36, ¶¶ 11-12).

The defendant's cash-handling procedures provide that, each time the safe's contents are counted, all bundles of cash (other than $1 bundles) must be broken open and re-counted.  (Doc. 36, ¶ 16).

On December 20, 2006, the opening associate was Page, the opening manager was McPherson, and the closing associate was the plaintiff.  On December 20, 2006, neither Page, McPherson, nor the plaintiff broke open the bundles of cash in the safe and recounted them.  (Doc. 37, McPherson Deposition at 12; Doc. 35, Page Declaration, ¶¶ 3-6; Doc. 29, Plaintiff's Deposition at 80).  On December 20, 2006, the plaintiff later broke open a $5 bundle, to provide cash to a cashier, and discovered it was short.  He and McPherson then recounted all the bundles in the safe and discovered a shortfall of $1,000. (*Id.* at 85; Doc. 34, Plaintiff Declaration, ¶ 15).

On or about January 12, 2007, the plaintiff was transferred to GSA.  (Doc. 36, ¶ 41).  District Manager Irvin Landry made the decision to transfer the plaintiff.  (Doc. 29, Landry Affidavit, ¶ 29; *id*., Sellers Declaration, ¶ 11).  Rose was transferred to a cashier position.  (*Id*., Landry Affidavit, ¶ 29).  Neither McPherson nor Sellers was transferred.

The plaintiff and Rose received six hours of formal training on the defendant's cash-handling procedures in July 2006, including how to properly count bundles.  (Doc. 29, Landry Affidavit, ¶ 22; Doc. 36, ¶ 50).  McPherson received no training on the defendant's cash-handling procedures.  (Doc. 29, Landry Affidavit, ¶ 40; *id*., McPherson Declaration, ¶ 8).  Landry was aware of this disparity in training.  (Doc. 29, Landry Affidavit, ¶¶ 28, 40).

At the time of the plaintiff's transfer, Landry was unaware that he had participated in an internal investigation.  (Doc. 29, Landry Affidavit, ¶ 42; Doc. 36, ¶ 61).  Sellers had no input in Landry's decision to transfer the plaintiff.  (Doc. 29, Landry Affidavit, ¶ 42; *id*., Sellers Declaration, ¶ 11).  The plaintiff was transferred four to five months after he participated in the internal investigation.  (Doc. 36, ¶ 62).

-3-

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

"To the extent that evidence conflicts at summary judgment, the district court has an obligation to view all the evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Allen v. Board of Public Education*, 495 F.3d 1306, 1315 (11th Cir. 2007) (internal quotes omitted).

The parties have submitted a number of exhibits, some of which they have not referred to in their briefs and some of which they have referred to only in part.  There is no burden on the Court to identify unreferenced evidence supporting a party's position.[4]  Similarly, "[t]here is no burden upon the district court to distill every potential argument

---

[4]*E.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court's review is limited to those portions of the exhibits to which the parties have specifically cited. The Court's review is similarly limited to those legal arguments the parties have expressly advanced.

Discrimination claims under Section 1981 and Title VII "have the same requirements of proof and use the same analytical framework." *Springer v. Convergys Customer Management Group*, 509 F.3d 1344, 1347 n.1 (11th Cir. 2007). The same is true for retaliation claims. *Butler v. Alabama Department of Transportation*, 536 F.3d 1209, 1212-13 (11th Cir. 2008); *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 978 (11th Cir. 2008). The Court therefore applies Title VII cases in assessing the motion for summary judgment.

Because the plaintiff does not rely on direct evidence of discrimination, the shifting burden appropriate for cases resting on circumstantial evidence applies. In Title VII cases alleging discrimination, the burden is first on the plaintiff to establish a prima facie case. If he succeeds, the employer must meet its burden of producing evidence of one or more legitimate, nondiscriminatory reasons for the adverse employment action. The burden then shifts back to the plaintiff to show that the employer's proffered reasons are a mere pretext for illegal discrimination. *E.g., Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002). The same burden-shifting paradigm applies to cases alleging retaliation under Title VII and Section 1981. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

## I. Discrimination.

The parties agree that the plaintiff's prima facie case requires him to show: (1) that he is a member of a protected class; (2) that he experienced an adverse employment action; and (3) that the defendant treated a similarly situated employee outside his

protected classification more favorably.  (Doc. 30 at 20; Doc. 40 at 7).  The defendant challenges his ability to satisfy the second and third elements.

### A.  Adverse Employment Action.

Title VII protects only against discrimination with respect to "compensation, terms, conditions or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), what the courts call an "adverse employment action."  Section 1981 is similarly limited.  *Butler*, 536 F.3d at 1215. The legal threshold of an actionable adverse employment action is "a serious and material change in the terms, conditions, or privileges of employment," as "viewed by a reasonable person in the circumstances."  *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).

The plaintiff describes his move to GSA as a demotion, which would certainly constitute an adverse employment action.  *E.g., Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  The defendant, noting that the plaintiff's pay, benefits and hours remained unchanged, refers to the move as a non-actionable transfer.

"In a Title VII case, a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility."  *Hinson v. Clinch County Board of Education*, 231 F.3d 821, 829 (11th Cir. 2000); *accord Doe v. DeKalb County School District*, 145 F.3d 1441, 1452 (11th Cir. 1998) (Americans with Disabilities Act).  This rule is consistent with the Supreme Court's pronouncement, in the sexual harassment context, that a supervisor's conduct for which the employer may be liable includes any "tangible employment action," which term encompasses "reassignment with significantly different responsibilities."  *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) (a "tangible employment action" is an "adverse employment action").

According to the defendant's job description, duties of an AISC include, without limitation: assuring that all customers are greeted and assisted; ensuring the work area is

swept clean; helping management maintain dress code standards; completing new hire paperwork; pre-screening associates; maintaining associate files and records; entering associates in file system; updating training records; handling customer problems; answering the telephones; assisting in training; coaching other associates on providing first-class service; ensuring that sales are properly recorded in cash registers; applying indirect labor charges; monitoring training payroll; and recording in-store use of merchandise.  (Doc. 29, Landry Affidavit, Exhibit 1).  The plaintiff presented evidence that the duties of an AISC also include operating the customer service desk, running the ATM machines, having carts removed from the parking lot, giving cashiers, customer service employees and baggers their lunches, making sure they take their lunches and breaks, and recommending discipline for these employees — in short, operating every aspect of the front end of the store.  (Doc. 37, Plaintiff's Deposition at 109-10; Doc. 34, Plaintiff's Declaration, ¶ 6).  Additional duties (according to the defendant, the principal duties) include overseeing the cash office, counting the money in the safe, distributing funds to cashiers as needed, and holding the key to the safe.  (Doc. 30 at 7; Doc. 36, ¶ 20).        According to the defendant's job description, duties of a GSA include, without limitation: greeting and assisting customers; sweeping the work area; stocking shelves and displays; unloading delivery trucks; cleaning shelves; rotating merchandise; organizing and cleaning the stock room; preparing merchandise for the reclaim center; cleaning up spills; and removing shopping carts from the parking lot.  (Doc. 29, Landry Affidavit, Exhibit 3).

Prerequisites for working as an AISC include, without limitation: a high school diploma or equivalent; proficient computer skills; proficient working knowledge of various departments; previous experience in one of several in-store positions; demonstrated good organizational skills; demonstrated excellent communication skills; and demonstrated good decision-making.  (Doc. 29, Landry Affidavit, Exhibit 1). Prerequisites for working as a GSA (also required for AISC) are, in total: ability to read

and write English adequately; ability to understand and follow English instructions; and successful completion of a pre-employment drug test.  (*Id*., Exhibit 3).

A GSA must frequently lift and carry up to 125 pounds; an AISC must occasionally lift and carry up to 50 pounds.  A GSA must frequently push and pull up to 2,500 pounds; an AISC must occasionally push and pull up to 50 pounds.  A GSA must frequently kneel, crouch, and crawl; an AISC must occasionally do so.  (Doc. 29, Landry Affidavit, Exhibits 1, 3).

This mountain of material makes plain that a reasonable person in the circumstances could consider a transfer from AISC to GSA to be a serious and material change in the terms and conditions of employment due to reduced prestige and responsibility, despite the equality of pay and benefits.  First, an AISC must have more education and work experience than a GSA, and must have computer skills, communication skills, organizational skills, and decision-making skills that a GSA need not possess.[5]  Second, an AISC has limited exertional requirements, while a GSA is engaged almost exclusively in heavy manual labor.  Third, an AISC has significant, ongoing responsibilities with respect to cash and other funds, while a GSA handles only inventory.  Fourth, an AISC has authority to direct aspects of the work of other employees, while a GSA only responds to direction from others.[6]

The defendant suggests that the plaintiff cannot have experienced an adverse employment action because he received a $0.60 raise after the transfer.  (Doc. 30 at 21; Doc. 29, Plaintiff's Deposition at 99).  There is, however, no evidence that the plaintiff would not have received the same raise, or even a greater one, had he remained as an

---

[5]*See Burlington Northern and Santa Fe Railway Co. v. White,* 548 U.S. 53, 71 (2006) (acknowledging that a position requiring more qualifications "is an indication of prestige") (internal quotes omitted).

[6]The defendant objects to the plaintiff's description of an AISC's duties as "supervisory," (Doc. 44 at 3), but semantics aside, it is clear that an AISC directs others to sweep, retrieve buggies and take breaks, while a GSA directs no one to do anything.

AISC.  Nor has the defendant offered any authority for the proposition that such a slim pay differential can, as a matter of law, preclude a transfer to a less prestigious position with significantly diminished responsibilities from being an adverse employment action.

The defendant also argues that there was no adverse employment action because there are more opportunities for a GSA to advance than for an AISC to do so.  (Doc. 30 at 21).  The defendant's evidence does not quite support this proposition, since it states only that there are more opportunities to advance in the company "working in one of the store's departments rather than in the office."  (Doc. 29, Landry Declaration, ¶ 32).  This testimony does not establish that GSAs in particular are more likely to advance than AISCs.  The testimony does not even establish that department workers are more likely to advance than office employees, since there is no way to determine how many workers of each type are chasing how many positions.  Nor is there a way to tell from this testimony how attractive the relative opportunities for advancement are, since in-store coordinator may well be a superior position to that of senior GSA.  Whatever weight the defendant's evidence may carry, it is not enough to support a finding as a matter of law that the plaintiff experienced no adverse employment action.

Finally, the defendant notes that courts "have been reluctant to hold that changes in job duties amount to adverse employment action when unaccompanied by any tangible harm."  *Davis*, 245 F.3d at 1244.  (Doc. 30 at 20).  *Davis* involved the fleeting addition and subtraction of the task of officer-in-charge to a road officer's duties.  When, as in *Davis*, what is at issue is only the shifting of work assignments of an employee who at all times retains the same "job title or classification" and core set of duties, finding an adverse employment action in the changing set of duties will be "unusual."  245 F.3d at 1245; *see also Davis v. United States Postmaster General*, 190 Fed. Appx. 874, 876 (11th Cir. 2006) (*Davis* stands for the proposition that, "in the vast majority of cases, a temporary change in work assignments that creates no tangible harm, and does not alter the employee's permanent job title, is not adverse").  Viewed most favorably to him, the

plaintiff was transferred to an entirely different and less prestigious job in a different department, with substantially different duties, on a permanent basis. *Davis* does not apply to such a situation.

In short, a reasonable factfinder could find that the plaintiff experienced an adverse employment action, *Hinson*, 231 F.3d at 830, and the defendant is not entitled to summary judgment on this ground.

### B. Similarly Situated Comparator.

"When comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides race." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1273 (11th Cir. 2004); *accord Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). The bar is even higher in some instances.

"When the racial discrimination is alleged in the application of work rules to discipline an employee, and where there is no claim that the employee did not violate the work rules, as here, then plaintiff must show that he engaged in misconduct similar to that of a person outside the protected class, and ... the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1276 (11th Cir. 2008) (internal quotes omitted). In particular, "[t]he quantity and quality of the comparator's misconduct [must] be nearly identical" to that of the plaintiff; "[m]isconduct merely 'similar' to the misconduct of the disciplined plaintiff is insufficient." *Id*. at 1280 (internal quotes omitted). The complaint identifies the plaintiff's claim as one of disparate discipline for violation of work rules, (Doc. 1, Exhibit 1, ¶ 9), and the parties agree that the *Rioux* standard applies. (Doc. 30 at 24; Doc. 40 at 14, 18).

The first task, therefore, is to identify the plaintiff's misconduct. The defendant describes it vaguely, but consistently, as "fail[ure] to follow [the defendant's] cash

handling procedures." (Doc. 29, Landry Affidavit, ¶ 28; *accord id*. ¶¶ 25, 26, 27, 36, 39, 40; Doc. 30 at 28, 30). Two such procedures are elsewhere identified: (1) breaking open all bundles of cash and recounting each bill with each safe count; and (2) having two employees present whenever the safe's contents are counted. (Doc. 29, Landry Affidavit, ¶ 18). The plaintiff in deposition admitted that he violated both procedures on December 20, (Doc. 29, Plaintiff's Deposition at 79-80), and the defendant suggests that his misconduct consisted of both misfeasances. (Doc. 30 at 28-29).

There is, however, no evidence that the defendant was aware, at the time it transferred the plaintiff, of his failure to follow the second procedure. As noted, Landry does not so claim in his affidavit, and the defendant's only evidence of the failure is the plaintiff's deposition, taken long after the transfer. (Doc. 30 at 28-29).[7] There is evidence the defendant did not mention violation of the second procedure to the plaintiff when it informed him of his transfer, (Doc. 29, Plaintiff's Deposition at 94), and Page — the only person Landry interviewed after the loss was discovered, (Doc. 29, Landry Affidavit, ¶ 26) — mentioned only the failure to count bundles. (Doc. 35, Page Declaration, ¶ 6). On this record, the Court can treat as the plaintiff's misconduct only his failure to count the bundles.

The plaintiff identifies two comparators: store manager Sellers and co-store manager McPherson. (Doc. 40 at 12). There is evidence that both Sellers and McPherson, whose jobs required them to count the safe's contents at opening and closing, routinely failed to count bundles. (Doc. 37, Sellers Deposition at 33; *id*., McPherson Deposition at 12, 53). It is uncontroverted that they were not transferred or otherwise disciplined after December 20 and so were treated more favorably than the plaintiff.

The defendant responds that, because these individuals held different positions

---

[7]It is possible, though not clear, that this discovery in deposition led to the defendant's motion to amend the answer to include an after-acquired-evidence defense. (Doc. 12).

than the plaintiff, they cannot be valid comparators.  (Doc. 30 at 23).  However, when a plaintiff alleges discriminatory discipline for violation of work rules, "[t]he relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies."  *Lathem v. Department of Children and Youth Services*, 172 F.3d 786, 793 (11th Cir. 1999).

 The defendant next argues that Sellers and McPherson cannot be valid comparators because the plaintiff had a different and more extensive congeries of cash-handling duties than did they.  In particular, the plaintiff had to count the safe's contents twice a shift, reconcile his counting with the office report, distribute funds from the safe to cashiers as needed, and hold the key to the safe during business hours, while Sellers and McPherson had direct responsibility only to verify the count of the plaintiff or other office associate at opening and closing.  (Doc. 30 at 23-24; Doc. 44 at 5-6).  Again, however, "[t]he relevant inquiry is ... whether the employer subjected [the plaintiff and his comparators] to different employment policies."  *Lathem*, 172 F.3d at 793.[8]  While their responsibilities were not identical, both the plaintiff and his comparators were subject to the same employment policy that bundles must be broken open and counted with each safe count.  (Doc. 29, Landry Affidavit, ¶ 18).

 The defendant next argues that Sellers and McPherson cannot be valid comparators unless their failure to count bundles resulted in a monetary loss to the defendant.  (Doc. 30 at 24; Doc. 44 at 6).  This is an interesting suggestion, but it is insufficiently developed to allow its consideration.  What the Court is to compare is "misconduct," not "the consequences of misconduct," as monetary loss from lax cash-handling procedures would appear to be.  Absent authority or legal analysis supporting its

---

 [8]Were the rule couched, as the defendant proposes, in terms of job responsibilities rather than employment policies, a white manager who stole from the safe could not be a comparator for a minority associate who did likewise — a result not easily reconciled with logic or common sense.

position, neither of which the defendant provides, the Court cannot accept the argument.[9]

Finally, the defendant argues that Sellers and McPherson cannot be valid comparators unless Landry, as the decision-maker, was aware of their failure to count bundles.  (Doc. 30 at 25; Doc. 44 at 7-8).  This appears to be correct,[10] but there is such evidence.  According to Page, she told Landry that "no one in the store counts the bundles once they are strapped" and that "everyone in the store including the managers" had done the same thing.  (Doc. 35, Page Declaration, ¶ 6).  Rose's statement was not, as the defendant suggests, hopelessly vague, (Doc. 44 at 8), given Landry's awareness that managers — including Sellers and McPherson — were required to count the safe's contents twice every day.  (Doc. 29, Landry Affidavit, ¶¶ 12, 16).

In short, on the present record and argument Sellers and McPherson are similarly situated comparators on whom the plaintiff can rely to satisfy his prima facie case.[11]

_____

[9]Nor is it clear the argument would assist the defendant on these facts.  It is uncontroverted that McPherson counted the safe's contents on December 20 without counting the bundles, (Doc. 37, McPherson Deposition at 12), so his misfeasance would appear to be as related to the loss as the plaintiff's.  The defendant's argument that the short bundles were not yet in the safe when McPherson counted, (Doc. 44 at 17), contradicts the plaintiff's evidence, (Doc. 34, Page Declaration, ¶ 6), and therefore cannot be accepted on motion for summary judgment.

[10]*See Knight v. Baptist Hospital, Inc.*, 330 F.3d 1313, 1317 n.5 (11th Cir. 2003) (unless the defendant knew of the comparator's conduct, "the events cannot be considered in determining whether [the plaintiff] and [the comparator] are similarly situated"); *accord Oliver v. National Beef Packing Co.*, 2008 WL 4277137 at *2 n.3 (11th Cir. 2008); *Amos v. Tyson Foods, Inc*., 153 Fed. Appx. 637, 647 (11th Cir. 2005) ("Employees are not 'similarly situated' if management is aware of one's improper conduct, but not aware of the others' conduct."); *Embry v. Callahan Eye Foundation Hospital*, 147 Fed. Appx. 819, 829 (11th Cir. 2005); *Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir. 1989).

[11]To the uncertain extent the plaintiff suggests that managers' conduct other than failing to count bundles (such as taking the key to the safe or failing to be present during an associate's counting) can satisfy the prevailing standard, (Doc. 40 at 15-18), the Court rejects the proposition.  The "nearly identical" standard exists "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."

### C.  Legitimate, Non-Discriminatory Reason.

The defendant's burden is usually described as one of articulating a reason "for the adverse employment action."  *E.g., Crawford*, 529 F.3d at 976.[12]  To meet its burden, the defendant must articulate a reason "legally sufficient" to justify judgment in its favor and must support the articulated reason "through the introduction of admissible evidence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "Moreover, this Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made."  *Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir. 1994). Rather, the defendant "must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision."  *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998).

The defendant identifies its legitimate reason for the plaintiff's transfer as his violation of cash-handling procedures, (Doc. 30 at 19, 28), which is on its face a legally sufficient reason for its action, and it has produced admissible evidence that this is what

---

*McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (internal quotes omitted).  At any rate, the plaintiff has presented no evidence that Landry was aware of any such conduct by Sellers or McPherson.

Although the plaintiff notes generally the existence of other managers and office associates that may have counted the safe's contents over time without counting bundled bills, he has named none of them as comparators.  Moreover, it is uncontroverted that this group includes both white and African-American employees, (Doc. 29, Landry Affidavit, ¶ 41), such that the plaintiff's failure to identify specific individuals and their race precludes a determination that they are "similarly situated in all relevant respects besides race."  *Jackson*, 372 F.3d at 1273.

[12]In the discipline context, courts sometimes phrase the defendant's burden as one of providing a reason "for disciplining the employees differently."  *Lathem*, 172 F.3d at 793; *accord Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000).  The plaintiff does not request that this formulation be employed.

-14-

actually motivated its decision.  (Doc. 29, Landry Affidavit, ¶¶ 28-29).

### D.  Pretext.

"The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for discrimination."  *Crawford*, 529 F.3d at 976 (internal quotes omitted). The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action."  *Rioux*, 520 F.3d at 1279; *accord Cooper v. Southern Co.*, 390 F.3d 695, 725 (11ᵗʰ Cir. 2004).  Of course, "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."  *Springer*, 509 F.3d at 1349 (emphasis in original) (internal quotes omitted).  To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

The plaintiff acknowledges that he violated cash-handling procedures by failing to count bundles.  (Doc. 29, Plaintiff's Deposition at 80).  His objection is that Sellers and McPherson also violated the rule but were not disciplined.  (Doc. 36, ¶ 47; Doc. 40 at 19). As noted in Part I.B, there is evidence that Sellers and McPherson were subject to the bundle-counting rule, that they routinely violated the rule, and that Landry was aware of their violations at the time he transferred the plaintiff.  If his work-rule violation were the true reason for his transfer, the plaintiff concludes, Sellers and McPherson would also have been disciplined.  *See generally Rioux*, 529 F.3d at 1276 ("Especially relevant to a showing of pretext would be evidence that white employees involved in acts against

petitioner of comparable seriousness ... were nevertheless retained or rehired.") (internal quotes omitted).

The defendant has presented evidence that it did not discipline Sellers because he was on medical leave from October 2006 to April 2007 and so had nothing to do with the events surrounding the missing $1,000 in December 2006. (Doc. 29, Landry Affidavit, ¶ 39). While the plaintiff offers evidence that Sellers came in the store "every now and then" to "check on things," including an appearance in December 2006, (Doc. 36, ¶ 55; Doc. 37, Sellers Deposition at 58), he has no evidence that Sellers was on duty or counted the safe's contents at any time between December 3 and December 20, 2006,[13] and thus no evidence that Sellers had any connection to the events leading to the loss of the $1,000. Because the plaintiff has no evidence that the safe was ever short on any other occasion, he has no evidence that Sellers' violations of the bundle-counting requirement were ever connected in any way to a loss. Although differences in the consequences of violating a work rule may not matter in determining if an employee is similarly situated to the plaintiff, *see* Part I.B, they very clearly matter in determining the sanction to be visited on the two. The failure to discipline Sellers under these circumstances is not evidence of pretext.

The failure to discipline McPherson cannot be justified on these grounds, because there is evidence that Landry knew, when he transferred the plaintiff, that McPherson had failed to count bundles on December 20 and so was also implicated in the loss of the $1,000. Instead, the defendant offers evidence that it did not discipline McPherson because: (1) his only duty was to verify the count, which is not the same type or level of responsibility as the plaintiff had; (2) he did not hold the key to the safe when the funds were discovered missing; (3) he had never violated cash-handling procedures, resulting in

---

[13]The plaintiff has presented evidence that the bundles found to be short had been in the safe since December 3. (Doc. 35, Page Declaration, ¶ 4; Doc. 34, Plaintiff's Declaration, ¶ 14).

a significant loss, when he held the key; and (4) he had not received formal training on the defendant's cash-handling procedures.  (Doc. 29, Landry Affidavit, ¶¶ 28, 36, 40).

The defendant does not helpfully explain the significance of these points.  It is certainly correct that the plaintiff had more extensive duties than McPherson with respect to the safe, but there is no evidence that the plaintiff was disciplined for violating any duty except the duty to count bundles, and there is evidence that McPherson was subject to the same duty and equally violated it, on December 20 and previously.  Likewise, it is true that the plaintiff but not McPherson held the key to the safe on December 20, but again there is no stated or apparent connection between holding the key and culpability for failing to count bundles, which is the conduct for which discipline was meted out.[14]

The lack of training, however, stands on different footing.  It is uncontroverted that the plaintiff had received six hours of formal training in proper cash-handling procedures, including how to count bundles, in July 2006.  (Doc. 29, Landry Affidavit, ¶ 22; Doc. 36, ¶ 50).  McPherson, in contrast, had received no such training and knew nothing of the bundle-counting rule.  (Doc. 29, Landry Affidavit, ¶ 40; *id.*, McPherson Declaration, ¶ 8).[15]  It is perfectly  reasonable that actual ignorance of a rule would ameliorate responsibility for its violation.  *See Mathis v. Wachovia Bank*, 255 Fed. Appx. 425, 431 (11th Cir. 2007) (because the plaintiff knew the proper procedures for processing a money order while her comparator "had yet to be trained," the comparator was not similarly situated).  Because it is uncontroverted that the plaintiff had been specifically trained to

_____

[14]Perhaps the defendant is attempting to suggest that the plaintiff had greater access to the safe and thus greater opportunity to steal the $1,000.  This is a questionable proposition, since McPherson had the combination to the safe, (Doc. 34, Plaintiff's Declaration, ¶ 26), but in any event it has not been shown to be relevant, since the defendant insists that it never accused the plaintiff of taking the money.  (Doc. 29, Landry Affidavit, ¶ 28).

[15]McPherson's mere status as a co-manager does not, as the plaintiff suggests, (Doc. 36, ¶¶ 50, 56), support a reasonable inference that he had received such training.

count bundles properly and that McPherson had not, the failure to discipline McPherson under these circumstances is not evidence of pretext. *See Taylor v. On Tap Unlimited, Inc.*, 282 Fed. Appx. 801, 804 (11th Cir. 2008) (where the plaintiff's misconduct was willful and the comparator's was not, the difference in the employer's treatment of them could not support pretext).

The plaintiff has previously espoused other evidence of pretext, but he has abandoned all such reliance in opposition to summary judgment. (Doc. 36, ¶ 47; Doc. 40 at 18-20). None of it would assist him in any event. That Rose was demoted in response to the incident is unimportant because her situation is indistinguishable from his: she failed to count bundles as she was trained to do, and the $1,000 was discovered missing on a day she had failed to do so. That the plaintiff was not questioned before being transferred signifies little without any indication that Landry acted with inadequate information or that further investigation would have uncovered exculpating evidence.[16]

In summary, the plaintiff has failed to come forth with evidence sufficient to present a jury question as to whether the defendant's legitimate, nondiscriminatory reason for his transfer is not its real reason but is instead a pretext for discrimination. Accordingly, the defendant is entitled to summary judgment with respect to the plaintiff's claim of race discrimination.

## II. Retaliation.

The parties agree that the plaintiff's prima facie case requires him to show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relation between the two events. (Doc. 30 at 26; Doc. 40 at 20). The defendant challenges his ability to satisfy the second

---

[16]Rose was questioned, and she informed Landry that both she and the plaintiff had violated cash-handling procedures on December 20. (Doc. 29, Landry Affidavit, ¶¶ 26-27). Had the plaintiff been interviewed, he would have admitted the same. (Doc. 29, Plaintiff's Deposition at 79-80).

and third requirements.

### A.  Adverse Employment Action.

The Supreme Court has never accepted that a retaliation plaintiff must show an "adverse employment action" as that term has come to be defined in the discrimination context.  On the contrary, the Court rejected the Sixth Circuit's usage of that term in *Burlington Northern and Santa Fe Railway v. White*, 548 U.S. 53, 60 (2006).  The Court held that "the anti-retaliation provision, unlike the substantive provision, is not limited to ... actions that affect the terms and conditions of employment." *Id*. at 64.  Nor is the requisite degree of adversity as high as in a discrimination case.  Instead, the test is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68 (internal quotes omitted).[17]

The defendant posits that the transfer to GSA as a matter of law was not "materially adverse" under *White*.  (Doc. 30 at 26 n.12).  Because, as discussed in Part I.A, there is a fact issue as to whether the transfer was an adverse employment action for purposes of the plaintiff's discrimination claim, there is also a fact issue as to whether such a transfer might well dissuade a reasonable employee from participating in an internal investigation of racial harassment.  The defendant is not entitled to summary judgment on this basis.

### B.  Causal Relation.

"To establish a causal connection, a plaintiff must show that the decision-makers

---

[17]The Eleventh Circuit's continued usage of the term, "adverse employment action," in describing a prima facie case of retaliation appears anachronistic.  *See, e.g., Crawford*, 529 F.3d at 970; *Webb-Edwards*, 525 F.3d at 1028; *Davis*, 516 F.3d at 978 n.52.

were aware of the protected conduct ....." *Shannon v. BellSouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotes omitted); *accord McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008).  It is uncontroverted that Landry made the decision to transfer the plaintiff, without input from Sellers.  (Doc. 29, Landry Affidavit, ¶ 29; *id.*, Sellers Declaration, ¶ 11).[18]  It is further uncontroverted that Landry was ignorant of the plaintiff's participation in the internal investigation following the noose incident.  (*Id.*, Landry Affidavit, ¶ 42; Doc. 36, ¶ 61).  These uncontroverted facts are fatal to the plaintiff's retaliation claim.

Even if there were some question as to whether Landry was aware of the plaintiff's protected conduct, or even if there were some evidence that Sellers (who allegedly was aware of the protected conduct) participated in the decision to transfer the plaintiff, he could not satisfy this element of his prima facie case.

"We have found that close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated."  *McCann*, 526 F.3d at 1376 (internal quotes omitted).  The plaintiff cannot rely on this principle because the time between his participation in the investigation and his transfer was four to five months, (Doc. 36, ¶ 62), and as a matter of law such a gap is too long to support an inference of causal relation.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."); *accord Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) ("By itself, the three month period between [the protected expression and the adverse action] does not allow a reasonable inference of a causal relation between the protected expression and the adverse action."); *accord Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (gap of four months too long to

---

[18]The plaintiff marked this portion of the defendant's factual rendition as "disputed," (Doc. 36, ¶ 51), but he identified no evidence to controvert the defendant's evidence.

constitute close temporal proximity).

"[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas*, 506 F.3d at 1364. The plaintiff identifies his "other evidence" of causation as follows: (1) Leitner claims she stumbled upon the noose incident when a deli employee happened to mention it, but the defendant's response to the plaintiff's EEOC charge says the company received an anonymous complaint concerning Sellers; (2) the response to the EEOC charge indicates the defendant's belief that the plaintiff authored the anonymous complaint, but he made no such complaint; (3) Leitner denies being told of racial slurs in the workplace, even though the plaintiff and another employee told her about them; (4) Leitner violated company policy by interviewing witnesses, including the plaintiff, in the presence of Sellers; (5) Leitner produced no report of her investigation; (6) Sellers was present when Landry transferred the plaintiff; and (7) Sellers was not disciplined for failing to count bundles. (Doc. 40 at 23-26).

The plaintiff offers no explanation how this evidence supports a causal connection between the plaintiff's participation in the investigation and his later transfer, and it is not the Court's duty to supply the deficiency. While the first five items may indicate a clumsy investigation by Leitner and perhaps those responsible for submitting the EEOC response, neither is accused of harboring any retaliatory motive. Sellers' mere presence when the plaintiff was transferred is unexceptional, especially since he was after all the store manager. The failure to discipline Sellers has been fully explored in Part I, and it does not suggest a retaliatory motive behind the plaintiff's transfer.

In summary, the plaintiff cannot establish his prima facie case of retaliatory transfer and therefore cannot survive the defendant's motion for summary judgment.[19]

_____

[19]On the final page of his brief, the plaintiff announces that he was denied vacation in May 2007, which constituted "another act of discrimination and retaliation," and he

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted**.  Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 31st day of December, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

proceeds to explain how he can establish a prima facie case of discrimination and retaliation in this regard.  (Doc. 40 at 26-27).  The complaint, however, makes no mention of vacation but is unusually clear that only the transfer to GSA is made the basis of the claims for relief.  (Doc. 1, Exhibit 1).  Because there is no claim concerning denial of vacation in this case, the Court need not consider the plaintiff's arguments concerning such non-existent claims.