# -IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MARKALE JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 08-0014-WS-C |
| | ) |
| WINN-DIXIE, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the plaintiff's motion for reconsideration. (Doc. 52). The motion seeks reconsideration of the Court's previous order granting the defendant's motion for summary judgment and the final judgment in the defendant's favor that resulted from that order. (Docs. 50, 51). The defendant has filed a response, (Doc. 55), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion for reconsideration is due to be denied.

## BACKGROUND

The plaintiff, an African-American, was employed by the defendant as assistant in-store coordinator. Among his duties was counting the cash in the store safe. In August or September 2006, he participated in an in-house investigation of an incident in which a noose was discovered at the plaintiff's store. In December 2006, approximately $1,000 was discovered missing from the store safe. In January 2007, the plaintiff was moved to the position of grocery stock associate, from which he voluntarily resigned in June 2007.[1]

---

[1] The Court rejected the defendant's argument that the transfer did not constitute an adverse employment action, since there was ample evidence that, despite equality of compensation, the new position was one of substantially diminished responsibilities and

The complaint alleges that the plaintiff was transferred on the basis of race discrimination and retaliation, in violation of 42 U.S.C. § 1981. (Doc. 1, Exhibit 1).

Among the plaintiff's duties was counting the cash in the store safe, twice each shift. Despite being formally trained to break open all bundled cash and recount it each time he counted the safe's contents, he never did so. In early December, some bundles were placed in the safe; the plaintiff never recounted them, including on December 20, the day he discovered the shortage when he broke open a bundle to provide cash to a cashier. The defendant maintained that it transferred the plaintiff due to his failure to count the bundles; the plaintiff countered that the defendant treated similarly situated white employees more favorably.

The plaintiff identified two comparators: store manager Brent Sellers and co-manager Jeremy McPherson. The Court concluded that both were similarly situated to the plaintiff, since each had the responsibility to count the safe's contents at least once per shift and both acknowledged they never recounted bundles when they did so. The Court also concluded, however, that the plaintiff had presented insufficient evidence that the defendant's articulated reason for the transfer was not its real reason but a pretext for discrimination. (Doc. 50 at 11-13, 15-18).

With respect to retaliation, the Court concluded that the plaintiff could not establish the causal connection between his protected conduct and the transfer necessary for his prima facie case for two, independently adequate reasons. First, it was uncontroverted that district manager Irvin Landry (who was ignorant of the plaintiff's protected activity) made the decision to transfer him without input from Sellers (who may not have been). Second, the four- to five-month gap between the protected activity and the transfer was too long to support an inference of causation on its own, and the plaintiff presented no additional probative evidence of causation. (Doc. 50 at 19-21).

---

prestige. (Doc. 50 at 6-10).

**DISCUSSION**

The plaintiff cites no authority for his motion to reconsider but, because he is challenging an order resulting in final judgment against him, the only available basis for his motion is Rule 59(e). "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir.2007) (internal quotes omitted) (bracketed material in original). Moreover, "a Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Id.* (internal quotes omitted) (bracketed material in original).

**I. Discrimination.**

The defendant presented evidence that it did not discipline Sellers after the December 20 discovery of the shortage because he had been on medical leave since August and so his practice of not recounting bundles was unrelated to the events surrounding the missing $1,000.[2] The plaintiff's failure to count bundles, in contrast, occurred during the time the short bundles were in the safe, including on December 20, and so was causally connected to the loss or its tardy discovery. The Court concluded that "differences in the consequences of violating a work rule ... very clearly matter in determining the sanction to be visited on the two" violators, such that the failure to discipline Sellers under these circumstances was not evidence of pretext. (Doc. 50 at 16).

The defendant presented evidence that it did not discipline McPherson because he, unlike the plaintiff, had received no training on proper cash-handling procedures, including the need to recount bundles. The Court rejected the plaintiff's suggestion that McPherson's mere status as a co-manager supported a reasonable inference that he had

---

[2]The plaintiff suggested vaguely that Sellers had been in the store in December, but he offered no evidence that Sellers had been on duty, much less that he had counted the safe's contents during the time the short bundles remained undiscovered.

received such training.  The Court concluded that the disparity in training was a reasonable basis for the disparity in discipline, such that the failure to discipline McPherson for violating a rule of which he was ignorant was not evidence of pretext. (Doc. 50 at 17-18).

Because the plaintiff offered no other evidence of pretext, the Court granted the motion for summary judgment.  (Doc. 50 at 18).

On motion to reconsider, the plaintiff argues that Sellers was at least as responsible as he for the loss, because Sellers, as manager, had the obligation to ensure that all employees followed the defendant's cash-handling policies, including the recounting of bundles with each safe count.  Had Sellers fulfilled his oversight duty, the plaintiff asserts, the bundles would have been recounted several times a day for weeks before his discovery of the shortage, either eliminating the shortage (assuming there was a thief emboldened by the failure to recount bundles) or hastening its discovery.  (Doc. 52 at 3-5).

This is a new argument and thus foreclosed from consideration under Rule 59(e). Nor does it disclose manifest error.  As noted in the Court's previous order, in order to be a valid comparator, "[t]he quantity and quality of the comparator's misconduct [must] be nearly identical" to that of the plaintiff; "[m]isconduct merely 'similar' to the misconduct of the disciplined plaintiff is insufficient." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1280 (11th Cir. 2008) (internal quotes omitted).  Sellers' failure to ensure that employees such as the plaintiff followed the bundle-counting rule may be similar to the plaintiff's actual violation of the rule by failing to count the bundles, but it is not "nearly identical." *See, e.g., Curtis v. Broward County*, 292 Fed. Appx. 882, 884 (11th Cir. 2008) (comparator who hung up on customers once or twice was not similarly situated to the plaintiff, who hung up on customers four times); *Mathis v. Wachovia Bank*, 255 Fed. Appx. 425, 431 (11th Cir. 2007) (comparator who failed to place required hold on two credit card checks totaling $2,700 was not similarly situated to the plaintiff, who failed to get required

approval before cashing a $3,000 check, even though both resulted in a four-figure loss to the defendant). Thus, even had the plaintiff timely raised Sellers' failure to ensure that other employees followed the bundle-counting rule, his claim would fail at the prima-facie-case stage for want of a valid comparator.[3]

With respect to McPherson, the plaintiff argues that, because it was his duty to count the safe's contents, it is "irrelevant" whether he had received training concerning the need to recount bundles with each safe count. (Doc. 52 at 6). This is a new argument and thus improper on motion to reconsider. It is in any event unhelpful, since without training McPherson would not be (and, according to the uncontroverted evidence, was not) aware of the rule that bundles were to be recounted regularly. The cases cited by the Court in its previous order reflect that a comparator's ignorance of the violated rule eliminates pretext, if not comparator status altogether. (Doc. 50 at 17-18).

As a spin on his preceding argument, the plaintiff suggests that the need to continually recount bundles is facially obvious, so that McPherson's failure to receive training informing him of the need is immaterial. (Doc. 52 at 6-7). This too is a new, and thus improper, argument. Nor is it supported. According to the plaintiff, the need to recount the bundles is obvious because, otherwise, the co-manager's recount of the in-store coordinator's count could accomplish nothing. (Doc. 52 at 7). On the contrary, by recounting everything the coordinator counted (i.e., everything but bundles), the manager's count confirms the accuracy of the coordinator's count. The failure to count bundles may preclude a perfect count of what is actually in the safe, but it does not render

---

[3]The plaintiff feels he was disciplined "for merely discovering a loss," (Doc. 52 at 3), but he was not. He was disciplined for failing to count the bundles as his job and training required. He objects that all other persons who counted the safe contents during the time the shortage went undetected also failed to count the bundles and so were equally deficient and equally responsible for the loss. (Doc. 52 at 3). This may be so, but the plaintiff elected not to name any of these persons (other than McPherson) as a comparator, so their conduct is irrelevant to his case and the defendant's motion for summary judgment.

the manager's count a less reliable confirmation of the coordinator's count.

Next, the plaintiff repeats his unamplified assertion that the mere fact McPherson was a co-manager supports a reasonable inference that he had been trained specifically to recount bundles. (Doc. 52 at 7). The Court has already rejected this argument, (Doc. 50 at 17 n.15), and the plaintiff's two-sentence regurgitation makes no effort to show error, manifest or otherwise, in the Court's ruling.

Finally, the plaintiff argues that the Court could not on motion for summary judgment accept Landry's uncontroverted affidavit testimony that he was aware of McPherson's lack of training, because: (1) it is not supported by documentary evidence; (2) Landry is an interested witness; and (3) the jury is not required to believe his testimony. (Doc. 52 at 7-8). None of these points were raised prior to entry of summary judgment, so none can support alteration of the Court's ruling.[4] At any rate, they are unavailing.

The plaintiff offers no explanation why the absence of documentary verification of Landry's affidavit presents a jury issue as to the truth of his testimony. Nor does he identify a single authority supporting such a rule. Nor does he suggest just what documentation he would expect to exist were Landry's testimony correct, the absence of which could raise a genuine issue as to the accuracy of that testimony. A diary entry ("Just learned McPherson has undergone no training on cash-handling procedures")? A memo ("Advised Landry that McPherson has never been trained")? Even had some corroborating document been presented, the (il)logic of the plaintiff's position would still require a jury issue to be found, since the document itself theoretically could be as incorrect as sworn testimony.

For his second point, the plaintiff cites *Reeves v. Sanderson Plumbing Products,*

---

[4] The plaintiff quoted from *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), in his brief statement of the "summary judgment standard," (Doc. 40 at 6), but he never attempted to apply it to any portion of the defendant's evidence.

*Inc.*, 530 U.S. 133 (2000), which states that "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Id.* at 151.[5] Appellate courts have rejected any reading of *Reeves* "as precluding summary judgment where the movant relies on the testimony of interested witnesses." *LaFrenier v. Kinirey*, 550 F.3d 166, 168 (1st Cir. 2008) (citing cases from the First, Third, Fourth and Sixth Circuits); *accord Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3rd Cir. 2007) ("The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible[,] even if the testimony is that of an interested witness."). More specifically, "[w]e do not interpret the quoted language so broadly as to require a court to ignore the uncontroverted testimony of company employees ...." *Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir. 2002). At any rate, an employer's representative is not an interested witness for purposes of *Reeves*. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002) ("The definition of an interested witness cannot be so broad as to require us to disregard testimony from a company's agents regarding the company's reasons for discharging an employee."). Even could Landry's affidavit nominally fall within *Reeves*, "where [the plaintiff] was given a clear opportunity to contradict [the defense] affidavit but did not, it would not be obvious error to include the affidavit's contents in the factual mix relevant to summary judgment." *Wilcox v. State Farm Mutual*

---

[5]The plaintiff misquotes and thereby overstates *Reeves*. (Doc. 52 at 7). The Court addresses only the actual language of *Reeves*, which reads as follows:
> [A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. [citation omitted] That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.

530 U.S. at 151.

*Automobile Insurance Co.*, 253 F.3d 1069, 1071 (8th Cir. 2001). In the face of this wealth of authority, the plaintiff's unadorned citation to *Reeves* cannot meet his burden to show "manifest error."

The plaintiff's third and final point flows from the immediately preceding sentence of *Reeves*, which states that the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." 530 U.S. at 151. *Reeves* does not, as the plaintiff supposes, thereby endorse the rejection of any and all evidence proffered by a defense witness on motion for summary judgment simply because it was offered by the defendant (a reading that would virtually eliminate motions for summary judgment). By tying the quoted language to the previously quoted language with the transitional phrase, "[t]hat is," the *Reeves* Court made plain that what a jury is not required to believe is only that evidence which is not uncontradicted, not unimpeached, and/or not from a disinterested witness (as defined by the appellate cases above). Removing the negatives, for purposes of Rule 56 analysis the jury is required to believe (and the Court to accept) a movant's evidence that is uncontradicted, unimpeached, and from a disinterested witness. *E.g., Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 479 (5th Cir. 2008); *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007). The plaintiff did not contradict Landry's affidavit and did not effectively impeach it, as discussed above. Finally, as also discussed above, Landry's position as the defendant's decisionmaker neither renders him an interested witness under *Reeves* nor permits the Court to disregard his testimony.

## II. Retaliation.

The plaintiff attacks both prongs of the Court's ruling that he cannot establish the element of causal connection between his protected conduct and his transfer. (Doc. 52 at 12).

With respect to the decisionmaker's awareness of the protected conduct, he first

suggests that Landry was aware of the plaintiff's participation in the investigation of the noose incident. He hinges this argument on the testimony of Rose Page (who was also transferred for failure to count bundles on and before December 20) that Landry told her she would be suspended; that she accused him of suspending her due to her complaints about racial slurs and a noose in the workplace; and that Landry thereupon "upgraded" her discipline to a demotion. According to the plaintiff, Landry had no reason to "puni[sh]" Page by enhancing her discipline unless he already knew about the racial incidents. Even if Landry was ignorant of the investigation before his meeting with Page, the plaintiff continues, her remark could have caused him to question Sellers and thereby become aware of the plaintiff's participation in the investigation. (Doc. 52 at 8-9).

Nothing remotely resembling this argument was pressed in opposition to summary judgment, and it is far too late to inject it now. At any rate, it does not hold its own weight. There is no logical connection between Landry's prior awareness vel non of the racial incidents and his alleged decision to demote Page after she accused him of retaliation. More fundamentally, that Landry learned from Page that she had participated in the investigation says nothing at all about whether he was aware that the plaintiff had also participated in the investigation. The possibility that Landry, upon learning of the investigation from Page, might have inquired further and discovered the plaintiff's participation, is but the rankest speculation, and "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (emphasis and internal quotes omitted); *accord CBS Broadcasting, Inc. v. EchoStar Communications Corp.*, 450 F.3d 505, 518 n.25 (11th Cir. 2006) ("[A]n inference based on speculation and conjecture is not reasonable" and so will not support a genuine issue of material fact).

As an alternative to showing Landry's awareness, the plaintiff provided evidence that Sellers was aware of his participation in the investigation. He did not, however,

present evidence that Sellers had input into Landry's decision to transfer him. (Doc. 50 at 20). The plaintiff now argues that there is such evidence, in that: (1) McPherson told him that the decision to transfer him was made by Landry and Sellers; and (2) Sellers testified that he and Landry talked about what Page's discipline would be. (Doc. 52 at 8-9).

The plaintiff in opposition to summary judgment did not raise either of these arguments and thus cannot do so now.[6] That Sellers talked to Landry about Page's discipline (he asked that she not be moved) is scarcely evidence that he also talked to Landry about the plaintiff's discipline, especially since the deposition page on which the plaintiff relies contains Sellers' denial that he did so. (Doc. 52, Sellers Deposition at 76).

With respect to the temporal lag between his protected activity and his transfer, the plaintiff does not contest that the gap of four to five months, on its own, is too long to support the causal relation element of his prima facie case.[7] Instead, he argues that the gap should be excused because Sellers was on medical leave during that period and thus unable to retaliate sooner. (Doc. 52 at 11-12). This argument was never hinted at in the plaintiff's earlier filings, so it has been waived. Nor does the plaintiff cite a single

---

[6]He did make both points in his proffered "surrebuttal" brief, (Doc. 46, Attachment at 11), but the Court disallowed that brief because the plaintiff offered no grounds for filing such a brief, and at the eleventh hour. (Doc. 48). The plaintiff certainly had no justification not to present these matters in his brief in opposition to summary judgment, since the defendant in its principal brief argued, and presented evidence, that Sellers' lack of input was uncontroverted, (Doc. 30 at 15, ¶ 51), and the plaintiff in response noted, without argument or citation to evidence, that the assertion was "disputed." (Doc. 36 at 17).

[7]He could scarcely argue otherwise. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."); *accord Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) ("By itself, the three month period between [the protected expression and the adverse action] does not allow a reasonable inference of a causal relation between the protected expression and the adverse action."); *accord Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (gap of four months too long to constitute close temporal proximity).

authority, of any description, for the proposition that the "close temporal proximity" standard is subject to modification under this or any other circumstance. On its face, it is not,[8] and it is easy enough to see why. The "close temporal proximity" test is a particular application of the principle of "post hoc, ergo propter hoc," in which causation is inferred from temporal relation. The Eleventh Circuit has described this principle as a "fallacy," because it is "based on the false inference that a temporal relationship proves a causal relationship,"[9] and nothing brought to the Court's attention suggests the appellate court would sanction an expansion of a principle that is of questionable value to begin with. This is not the stuff of which manifest error is born.

The plaintiff does cite authority (as he did previously) for the proposition that the time period may be stretched when, between the protected activity and the adverse action, there is a "pattern of retaliatory conduct." (Doc. 52 at 10 (quoting *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996)). Even if the plaintiff had shown the Eleventh Circuit would adopt the Tenth Circuit standard, he has identified no retaliatory conduct, much less a pattern thereof, occurring between his protected expression and his transfer.

Finally, the plaintiff asserts that he has additional evidence of causation the Court did not consider previously. (Doc. 52 at 11). The facts he offers, however, are a subset of those the Court explicitly addressed in its order granting summary judgment. (Doc. 50 at 21). There is nothing new here, and no effort to show that the Court's assessment of this evidence as irrelevant to causation was erroneous, manifestly or otherwise.

---

[8]*See, e.g., Thomas*, 506 F.3d at 1364 ("[I]n the absence of other evidence tending to show causation, if there is a substantial delay *between the protected expression and the adverse action*, the complaint of retaliation *fails as a matter of law*.") (emphasis added).

[9]*McClain v. Metabolife International, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005); *accord Bob Maxfield, Inc. v. American Motors Corp.*, 637 F.2d 1033, 1038 (5th Cir. 1981).

## CONCLUSION

Motions to reconsider under Rule 59(e) are appropriate in only a few narrow circumstances, none of which is implicated here. For the reasons set forth above, the plaintiff's motion for reconsideration is **denied**.

DONE and ORDERED this 2nd day of February, 2009.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE